[ *491 ]    *THE PEOPLE, on the relation of the Commissioners of Highways of Cortlandville, *vs.* THE JUDGES OF CORTLAND COUNTY.

The act *relative to highways*, authorizing commissioners to ascertain, describe and enter of record roads used as public highways for 20 years, confers no authority upon the commissioners to adjudge what was *originally intended* in relation to the .width or location of the road, any further than such intention is manifested by *actual user*, and they cannot enlarge the width of the road or change its location.

But where commissioners did, under the above authority enlarge a road by describing it as *three rods wide*, when in fact its width never exceeded *two rods*, and also *changed its location*, it was held that the party aggrieved had no remedy *by appeal* to the judges of the county in which the road is situated: *so held*, by Judges BRONSON and COWEN; the CHIEF JUSTICE dissenting.

Whether the party aggrieved in such case has a remedy, and if so, what remedy, *quere.*

CERTIORARI to three judges of the county of Cortland. On the 6th July, 1839, the commissioners of highways of the town of Cortlandville, made an order, adjudging that a certain road in that town, particularly des-

Albany, October, 1840.—The People v. Judges of Cortland Co.

ignated, *had been used as a public highway for twenty years, but had not been recorded ;* and they thereupon proceeded to *ascertain, describe and enter the road of record* in the town clerk's office. *Nathan Peck,* conceiving himself aggrieved by the determination of the commissioners, appealed to the judges, who, after notice and hearing of the parties, made an order on the 15th November, 1839, *reversing in part,* the order of the commissioners.

From the return, it appears that the commissioners in their order, declared the road to be *three* rods wide, and they insisted before the judges that this was the width " originally intended." The judges say it was proved before them that the road never was opened more than *two* rods wide—it now runs where it has always run, and Peck's fences on the south side of the road now stand on the same spot where they have always stood since the road was opened ; that the survey and record of the road by the *commissioners has *altered* the road nearly the width of it—    [ *492 ] carrying the south line nearly one and a half rods into the cultivated fields of Peck, and running it through his garden of the growth of more than four years, and also through his barn and sheds. The judges reversed so much of the order of the commissioners as had the effect to alter the south line of the road, and made it encroach, on the lands and premises of Peck.

*H. Ballard,* for the relators.

*W. H. Shankland,* contra.

The following opinion was delivered :

By BRONSON, J. The legislature has enacted, what the common law had already declared, that roads, although not recorded, which have been used as public highways for twenty years, shall be deemed public highways. 1 *R. S.* 521, § 100. And it is the duty of the commissioners in the several towns, to cause such roads to be *ascertained, described* and *entered of record* in the town clerk's office. *Id.* 501, § 1, *sub.* 3. This provision does not authorize the commissioners to say what was " originally intended," either by the owner of the soil or any one else, in relation to the width or location of the road, any further than such intention has been manifested by permitting the way to be used. It is a power in relation to the road *as it actually exists,* and *has existed* for the last twenty years. It does not authorize the commissioners to create or enlarge, but only to perpetuate the evidence of a public right. Both the *extent* and the *fact* of dedication depend on the user ; and the public must take *secundum formam doni.* On

the facts returned by the judges, it is quite clear that the commissioners exceeded their powers, and the only question is, whether Peck had a remedy by appeal.

There may be an appeal to three of the county judges from any determination of the commissioners, " either in *laying out, altering* or [ *493 ] *discontinuing*, or in refusing to lay *out, alter or discontinue any road.*" *Id.* 518, § 84. The right of appeal is not given in general terms, but the cases in which it may be exercised are specially enumerated. That enumeration, so far as it goes, corresponds precisely with the powers conferred on the commissioners. They have authority to *lay out alter* and *discontinue* roads. *Id.* § 1, 2. But the commissioners have many *other* powers, and among the number, that of causing certain roads " to be *ascertained, described* and *entered of record,*" § 1, to which the right of appeal has not been extended.

In relation to the section giving an appeal, the word " discontinuing" can call for no remark. It seems almost equally clear that the word " altering" does not reach this case. The commissioners did not profess to make any *change* in the road, but simply to *describe* and *record* it. I may add, that the power to *alter*, and that to *record*, are not only given by distinct clauses of the statute, but they are conferred for different purposes. The one is to be exercised when the road is deemed " inconvenient ;" the other, when the road either has not been " recorded," or is not " sufficiently described." *Id.* § 1, *sub.* 2, 3. The power to *alter*, is given for the purpose of making the road better by changing its site ; that to *record*, for the purpose of preserving a written memorial of the road as it already exists.

As to the remaining words—" laying out"—they seem obviously to mean something different from that of describing and recording a road as it already exists. But that is not all. There is no reason for understanding these words differently where they occur in different parts of the statute. They were evidently used in the section giving an appeal, because they had been used in the sections conferring power on the commissioners and regulating its exercise. The power of the commissioners is, " *to lay out* on actual survey such *new* roads in their respective towns as they may deem necessary and proper. *Id.* § 2. And in the fourth article, *p.* 513, the words " to lay out," " laying out" &c. will be found in almost every section, and wherever they occur they were manifestly used in refer- [ *494 ] ence to *the opening or establishing a road *where none existed before*. We cannot make them apply to the describing and recording of an old *road*, without doing violence to the language of the statute.

There was some reason for not making the right of appeal co-extensive with the powers of the commissioners. In opening new roads, and altering and shutting up old ones, the commissioners act judicially, and in matters ma-

terially affecting the interests of individuals. But in describing and recording a road which has already become public by twenty years' use, they perform little more than a ministerial duty, and third persons cannot be materially affected, for the reason that the owner has already dedicated the soil, and nothing is wanting but record evidence of the existing, public right. So where a road already " laid out, but not sufficiently described," is described and entered of record by the commissioners, *Id.* § 1, *sub.* 3, they do little more than to perfect and preserve the evidence of an existing public right, and no appeal has been given.

It is true that the commissioners, under colour of recording a road as it already exists, may, as seems to have been the case in this instance, describe and include lands which never formed a part of the highway. Indeed, they may describe and record a highway where none has ever existed. But we must not suffer ourselves to be misled concerning the right of appeal, which depends on the statute, by the fact that the commissioners may abuse their authority. In this case, they have not professed either to lay out or alter the road, but simply to ascertain, describe and record one. If, in doing this, they have encroached on lands which do not belong to the highway as it had been actually opened and used, the owner probably has a remedy in some form ; but it is not by appeal. Whether he should proceed by *certiorari* to the commissioners, whether, in all the forms in which the question may arise, he may insist that the act of the commissioners is void on showing that they exceeded their jurisdiction, are questions not now before us.

Although an injury had been done to Peck, who prosecuted the appeal, I think the judges had no jurisdiction to *redress the [ *495 ] wrong, and their proceedings must consequently be reversed.

Mr. *Justice* COWEN concurred.

The CHIEF JUSTICE dissented, and delivered the following opinion : " The only question to be determined is, whether the judges have jurisdiction to entertain an appeal under the highway act in this particular case.

The commissioners are empowered to cause such roads as have been used for twenty years, but not recorded, to be *ascertained, described and entered of record in the town clerk's office,* 1 *R. S.* 500, § 1, *sub.* 3 ; and in § 104, *p.* 517, it is declared, that all roads not recorded which shall have been used as public highways for twenty years or more, shall be deemed public highways.

The commissioners of Cortlandville having, on the 6th July, 1839, determined that the road in question had been in use twenty years, proceeded to ascertain and describe the same, and cause it to be surveyed and recorded. An appeal was taken to the judges complaining of a *part* of the proceed-

ings of the commissioners, agreeably to the 88th § of the act, p. 514, and which they reversed.   The 88th § provides that every person who shall conceive himself aggrieved by any determination of the commissioners, either *in laying out, altering or discontinuing*, or in refusing to lay out, alter or discontinue any road, may, at any time within sixty days, appeal to any three of the judges, &c.

The argument against the power of the judges is, that the proceeding to ascertain and enter of record a road in use twenty years, is not a *laying out* of a road within the meaning of this section.   The point is not free of difficulty, but, upon full consideration, I am inclined to think the doings of the judges should be sustained.   The act appears to contemplate two modes of laying out highways : *one* by the intervention of a jury of freeholders, and the other by the commissioners alone ; an instance of the latter is, where the entire line of the road passes through unimproved lands.   The [ *496 ]   assistance of the jury is not then called in, *see art.* 4, *p.* 510 ; and without any forced construction, we may, I think, regard as another instance in which they may act alone, the survey, ascertainment and recording of a road which they determine has been used for twenty years ; it is practically, and in effect, a *laying out* of the same.   They first examine and adjudge the length of time the road has been in use—if the twenty *years, then its* line and boundaries are ascertainad, fixed and recorded as in other cases.   The record is, doubtless, as conclusive upon all the world as if it had been laid out anew in any other mode ; indeed it is so decided.   *Colden* v. *Thurber*, 2 *Johns. R.* 429.

The reasons for an appeal are as strong in this case as in any other ; and it may be added, also, that the act contemplates the laying out of the road by these officers without any application to them.   § 59, *p.* 510.

Upon the whole, I am of opinion here was a determination in the laying out of a road within the meaning of the statute authorizing an appeal to the judges, and that their proceedings should therefore be affirmed."

But a majority of the court being of a different opinion, the proceedings of the judges were *reversed.*