### HICKOK *vs.* THE TRUSTEES OF THE VILLAGE OF PLATTSBURGH.

Where the legislature, by special statute, declares that all streets, roads and alleys in a particular village which have been worked and improved and which are now used as such, shall be deemed public highways, the character of the streets, roads and alleys, and whether highways or not, is thenceforth to be determined not by the rules of the common law or the general statutes relating to highways, but by inquiring simply whether, as a matter of fact, any particular street or alley comes within the provisions of the statute.

Overseers of highways, acting under the general authority of the trustees of a village, who are by law commissioners of highways, and without directions as to the specific application of labor, under their warrants, may create a liability on the part of the trustees, by applying the labor to the improvement of a particular street.

Unless such acts of the overseers are repudiated or disavowed by the trustees, they will be presumed to have ratified them.

The question whether a *cul de sac*, or a road or street which is closed at one end, and only communicates with a public road or street at the other, can be a *highway*, discussed.

ACTION by the plaintiff to recover for injuries received in traveling through Church alley in the village of Plattsburgh, which was out of repair. The defense was that Church alley was not one of the streets or alleys of the village. The facts sufficiently appear in the opinion.

*Wm. A. Beach,* for the plaintiff.

*Parker & Armstrong,* for the defendant.

*By the Court,* POTTER, J. The amendment of the act incorporating the village of Plattsburgh, passed April 12, 1848, (*Laws of* 1848, *ch.* 291,) provides that " all streets, roads and alleys within the said village *which have been worked and improved* by the trustees of the village or the commissioners of highways of the town of Plattsburgh, *and are now used as such,* shall be deemed public highways." This was a special legislative enactment that all the streets, roads and alleys in that village should be thenceforth public

highways, if brought by this act within certain conditions. It is therefore really unimportant, under the special provisions of this statute, to enter upon an inquiry as to what constitutes a highway at common law ; or whether a *cul de sac* can become a highway by dedication and use, or even as to what constitutes a highway under the general highway statutes of this state. *These* streets, roads and alleys, are made highways by special statute provisions, applicable to the streets, roads and alleys within the village of Plattsburgh that have been worked and improved by the trustees of the village or by the commissioners of the town, and only to those that were then used as such. Unless this statute was intended to change the common law and also the general highway statute, in their application in particular to the streets, roads and alleys in that village, the 4th section of the act of 1848 is worse than surplusage. Why should the corporation ask for, or why the legislature enact, that the common law, and the existing statutes in relation to highways, should apply to the streets, roads and alleys of the village ? They would apply, without this special enactment. The very fact that this *special* statute provides that those streets, roads and alleys *should be deemed highways,* in case they came within the terms of the act, implies and presupposes that at least some of them, by reason of not being laid out in compliance with the statute, and their having been of less than twenty years' use, were *not then* public highways. If, according to the settled rule of construction, the provisions of this statute must be made to mean something, this is its meaning. The character of these streets, roads and alleys is to be determined, not as is urged by discussing the common law or general statute provisions, but by inquiring simply whether as a matter of fact, any particular street or alley comes within the special provisions of the fourth section of the act of 1848. These inquiries then become questions of *fact,* having reference to the *time* of the taking effect of this statute, (to wit, twenty days after its passage,) viz : 1st. Was the *locus in quo,*

at the time of the taking effect of the act of 1848, an alley within said village ?   2d. Had such alley at that time been worked and improved by the trustees of said village, or by the commissioners of highways of that town ? and 3d. Was such alley, at said time, used as such ?   If there was a conflict of evidence upon either of these facts, it was a question that of right should have been submitted to the jury, and if found in the affirmative, the plaintiff ought not to have been nonsuited.   The next subject of inquiry is whether there was any evidence to sustain either of these facts.   The plaintiff asked to go to the jury upon the questions of fact appearing in the case.   The judge at circuit refused this, upon the law as settled at the general term when the case was here before ; regarding the facts as not being *materially* changed, and therefore granted the nonsuit.   As the learned judge who granted this nonsuit was not a member of the general term when the judgment was set aside, it is but justice to him, as well as to the case, to say that it is not an easy matter now to declare with certainty what was settled at the general term.   Two of the three members of the court concurred in a *conclusion,* though not entirely for the same reasons, that there was error enough committed on the trial to order a new trial.   One of the three justices *then* dissenting from this conclusion.   Having now arrived at a conclusion upon the case, different in result from my conclusion upon the former case, it is but just to state the grounds, to prevent what might be regarded as an inconsistency of opinion.   Upon the former trial the judge charged the jury at considerable length, and among the propositions of his charge, I thought there were some errors, though in the main the charge was correct.   The charge was excepted to, but the exception was so general that it did not bring up any part of it for review ; but the counsel for the defendant then presented two propositions which he requested the judge to charge, and which in my judgment were clearly legal and proper to be charged, and which the judge refused to charge, and exceptions were duly taken.   For

these errors alone I felt bound to vote for a new trial, and so stated, in a short opinion written on that review.  Those errors are not in the present case.  In regard to the questions of fact upon the last trial there was doubtless sufficient evidence on the point of dedication of Church alley, to have submitted it as a question to the jury, whether Church alley existed as an alley of the village when the law of 1848 took effect.  This was one of the conditions of the special act necessary to make it a highway.  It was at that time used as a traveled way by the public for the ordinary purposes of a street, not only by residents living and transacting business upon it, but by public stages and trucks passing through it to and from other business portions of the village, as the nearest and most direct way.  It was therefore, within the express language of the 4th section of the act of 1848, " used as a highway," or at least as " an alley."  But there is more than this ; unless I am mistaken in the application of the facts.  The book of records of the trustees produced in evidence shows an official recognition of this alley, by a resolution passed at a meeting in August, 1840, " to *repair a drain* across the street near E. Buck's store."  It appears by several witnesses that E. Buck's store was on Church alley. Three days after the law of 1848 took effect, to wit, 5th May, 1848, the trustees by a resolution fixed a location on " Church alley," as a location for a public pound for the village.  This was a cotemporaneous recognition of it as an " alley" for a public purpose.  There are other indirect official recognitions in ordinances and otherwise.  The main, or rather the most controverted issue in the case, is whether at the time of the taking effect of the statute of 1848, this alley had been " worked and improved by the trustees of the village."  If it had, the plaintiff was entitled to have his case go to the jury.  I am compelled to say that I find in the case now before us not only evidence tending to prove, that this alley had been so worked and improved by the authority of the trustees, but evidence to such an extent that it was error not to have sub-

mitted it as a fact to the jury, and this without fault of the judge who tried the case, as before stated. It was rather the result of a concurrence of circumstances which made a new trial on the former case necessary, without settling the law of the case. Upon this point there was evidence tending to prove that the trustees had improved this alley. They had issued the warrants to the overseer of highway work, without any direction as to its local application; in other words, they left these officers like pathmasters in towns, to exercise their own discretion within their assigned districts as to the application of the work. The act of the overseer might or might not be the act of the trustees, depending upon whether he exceeded his powers. If performed without their direction and authority—and certainly if in violation of it—it would not be binding; but if without dissent, or with implied assent, or with subsequent express or implied ratification, it would be binding, and be in law the act of the trustees. The circumstances which either prove or disprove this assent or ratification are appropriately matters for the jury.

There is another view of this case, which from its several trials, its long continuance in the court, the importance to the parties that it should be finally determined, and that the law which controls the case should all be so settled as to prevent, if we may, much more litigation, may make it proper to look at another question of law which arises in the case; and which was discussed by the learned judge who wrote what is called the prevailing opinion on the former review. A contingency may happen, to make it necessary. If the plaintiff should fail to prove, on a future trial, that this alley was made a public highway by official compliance by the defendant with the conditions of that special act of the legislature, I do not see that he would be estopped from proving that said alley was still a public highway; made so by either of the other modes, to wit, at common law, or under the general statutes. If the alley in question was a highway at the time of the passage of the act of 1848, then it required no evidence on the

part of the plaintiff of improvements made or work bestowed upon it by the trustees in order to create the liability to him. If there had been a dedication of this alley by the landowner for at least twenty years prior to the passage of the act of 1848, for the use of a road, and it had for all the intervening period been used as a public highway, it became a highway as well at common law as by the provisions of section 135 of the general highway act, and it then became the duty of the trustees to keep the same in repair. (*Id.* § 1.) And by subdivision 7 of the same section, it was made the duty of the trustees as such highway commissioners to order all necessary work to be done. Whether it had *thus* become a highway, might also have been a question of fact proper for the jury. These provisions of the statute are but the enactment of what was before the common law. (24 *Wend.* 492. 3 *Kent's Com.* 451.) There was evidence of its being used in part, or at one end, for more than twenty years. Whether dedicated for the use of a road, the purpose for which it was used—and the extent of its use—may also be questions for the jury; and a continued user for twenty years warrants the presumption of dedication, by the owner, for the purpose for which it has been used; and the acts or acquiescence of the owner, as well as the use, and its purpose, are all questions of evidence to be passed upon as facts if there shall be a conflict. (*See Pearsall* v. *Post,* 20 *Wend.* 111, *and cases cited; S. C.* 22 *id.* 431.)

There is but one question more that I deem it necessary to notice. It has been argued before us that the alley in question was, until it was extended somewhere about the year 1841 or 1842, a "cul de sac;" that it was closed, by its termination at the west end against the unimproved lands of the Brinckerhoof estate; and that up to the period last named, it could not therefore be a public highway. If, on the trial, this question is reached, under this last view of the law of the case, then it is important that this question of a cul de sac should also be examined and passed upon. The evidence on the last trial, as well as on the former, establishes the

facts that are assumed by this proposition. Whether a "cul de sac" can, or cannot be a public highway, depends upon the common law, and not upon statute. To find the common law on the subject of a "cul de sac," we are chiefly and of necessity driven to the English common law authorities, as by reference to our own in this state, no case directly in point is cited, and I have found none within the limits of my own examination. There are two or three modern cases, in which the law relating to a "cul de sac," has been discussed, and obiter opinions given. (*Wiggins* v. *Tallmadge*, 11 *Barb.* 457, *and Holdane* v. *Trustees of Cold Spring*, 23 *id.* 103; *S. C.* 21 *N. Y. Rep.* 474.) In the court of appeals, in the last cited case, the question was not before them directly for decision, and they decided the case upon another point. It was there decided upon the question of insufficient evidence of dedication; and the court below were divided upon the question of a "cul de sac." In *Wiggins* v. *Tallmadge* the court were also divided, the other way; and in neither case was the question directly and necessarily before the court to be decided. Whether a road or street which is closed at one end, and only communicates with a public road or street at the other, is susceptible of dedication to the public use as a highway, remains still, upon authority in this state, as much an unsettled question as ever. And the English cases did seem strikingly in conflict. The American and English authorities are fully collected and examined by Hand, J. in *Wiggins* v. *Tallmadge*, relating to every class of highways, and he comes to the conclusion, in which Willard, J. concurs, that a "cul de sac" may be a highway; while Emott, J. in *Holdane* v. *Trustees of Cold Spring*, Brown, J. concurring, upon examination of a part of the same authorities, arrives at a different conclusion. Were I to examine this case upon principle, as I think we are at liberty to do, I should hold that wherever the public convenience demanded it, whatever might be the particular form or shape required, or its terminus, a highway can be established, by dedication

and user; or by the public authority. To hold as a principle of settled law that a highway must of necessity be a thoroughfare, that is, that it must connect at each terminus with some other street, or rather to be infinite, having no termini, is not consistent in frequent instances with public convenience, and has not a basis of good sense to sustain it. Many of our public streets, in populous towns and cities, with which I am acquainted, abruptly terminate upon rivers disconnected with ferries, or public streets upon the opposite banks; and are compactly built up, inhabited and used for every purpose of a highway, to high water mark. These cannot be thoroughfares. Are not these therefore highways? They have been so regarded from a period whereof the memory of man runneth not to the contrary. Suppose what is called a court, of a square or circular form in a city, the entrance whereof is from but one public street. If it be built up, and occupied and used for the same business purposes of every other street of the town or city, if the way which passes in front of the business establishments thereon is open to all the public who choose to travel over it for business or pleasure; if the public stages, trucks, and other public vehicles of business, or pleasure carriages, use it in the same manner as all other streets are used; if its inhabitants are taxed and assessed like other citizens for highway labor; does the mere fact that the egress must be at the same opening as the entrance exclude this business part of a city from having this as its highway? I am unable to see a reason for establishing it as a technical legal rule, that a highway *must* be a thoroughfare. It is impracticable. A journey upon a way around the globe, if it could be on terra firma, upon one line of latitude, would bring the traveler out at the point of starting. A road upon this line, upon such a principle, would be neither a highway nor a thoroughfare. It would like a cul de sac, only open into itself. Undoubtedly there are a class of cases where a way may be dedicated by an individual or by individuals, leading only to private dwellings, or into the fields, which from the

intent of the dedication, and the purposes of their use, would exclude them from being classed as highways. It is in the ascertainment of the purpose which distinguishes these from the other, and which is not always easy of determination, that has produced the apparent conflict of cases found in the books. We are then in this state without common law, except such as we borrow from the English cases upon this question. The opinions of a majority of two co-ordinate courts cited, are found to differ in their construction of the English cases. In a case in the English court of queen's bench, later than either of the cases reviewed by Justices Hand or Emott, (*Bateman* v. *Bluck,* 14 *Eng. L. and Eq. Rep.* 69,) decided as late as in June, 1852, that court has reviewed the cases which are supposed by our judges to be in conflict. They have settled that conflict, and have laid down, as I regard it, a very sensible view of the law. The simple proposition therein decided, is, "that a public highway may, in point of law, exist over a place which is not a thoroughfare." That case was not a thoroughfare. The issue was left to the jury, who found a highway existing over the place in question. Lord Chief Justice Campbell said, "We must take it that this is a good finding on this issue, unless there cannot in point of law be a highway where there is no thoroughfare. *Now such a position cannot, I think, be supported.* There may or there may not be a highway under such circumstances." And he adds, "that he does not find that the case of *The Rugby Charity* v. *Merryweather,* (11 *East,* 375,) has ever been expressly overruled." "It seems to me that it rests on the principle of convenience." (*Id.*) And "this is not inconsistent with what is laid down by Hawkins and other text writers on the subject." This was concurred in by all the judges in that case, who express their opinions to that effect. That of Erle, J. being in brief, as follows: "The question is whether there can be in law, a highway where no thoroughfare exists. It seems to me clear from the authorities, that there can be such a highway, and convenience requires that this

should be so. It is for the jury to consider whether on the whole of the facts proved, they will presume a dedication to the public." *We* have no right further to differ about the meaning of the English authorities. They have settled that difference in their own courts. We certainly have not adopted a different rule, by express adjudication. The good sense of the rule which accompanies the decision I concur in. It is the only practical rule that can be established. If I am right in these views, then the nonsuit should be set aside, and there ought to be a new trial, with costs to abide the event.

[CLINTON GENERAL TERM, May 5, 1863. *Potter, Bockes* and *James,* Justices.]