Michael Catalano, J.
Plaintiff and defendant Town of West Seneca (herein called “ Town ”) seek judgment against defendant City of Lackawanna (herein called “City”) declaring a *976 truck-weight-limit ordinance “ void, unconstitutional and ineffective ” and enjoining its enforcement. The City prays for judgment “ declaring that the obligation for furnishing a truck route for West Seneca industry and lands rests upon the defendant, Town of West Seneca.”
The court finds these facts:
The questioned City ordinance provides: “ No person, shall operate or drive and no person, firm or corporation or association shall cause to be operated or driven, any truck in excess of five (5) tons gross weight except for making deliveries on the following street: Fisher Road,” effective April 15, 1965. (Traffic Ordinances, § 6, ch. 5E.)
This ordinance was debated at a public meeting, but no findings of fact were made by the City for its adoption.
The City is four square miles, rectangular, predominantly industrial and manufacturing; only the third of three wards is zoned predominantly residential. Seventy-two cents of every tax dollar on realty comes from industry. The most highly-priced homes in a radius of five City blocks from Fisher Eoad are $15,000 to $18,000 each. This City area abuts the Town zoned for light manufacturing.
Fisher Eoad is an old farm road built up over 40 to 50 years on heavy slag and cinders with asphalt topping. It starts at Abbott Eoad in the City, extending east in the Town to Orchard Park Eoad. Starting at Abbott Eoad, the first 1,000 feet are in the City which enacted the questioned ordinance; the next 1,400 feet are in the Town, ending in a cul-de-sac at the New York State Thruway. Across the Thruway at that point are the rights of way of the Pennsylvania Eailroad, New York Central Eailroad, a water main and the Niagara, Lockport and Ontario Power Company. Eight hundred feet east of the City’s eastern limit across Fisher Eoad runs the Lehigh Valley Eailroad right of way, including a private road that parallels the track.
The City’s 1,000 feet of Fisher Eoad have never been dedicated or accepted as a street by the City which technically is not obliged to maintain or service it. The structure of other City roads that parallel Fisher Eoad in that area is built of residential street design, having a base of eight-inch number three and four stone, a two-inch layer of number two stone, topped by a one-inch layer of asphalt; Fisher Eoad in the City is the only one in the area not so constructed. Fisher Eoad has a sanitary sewer; it has no curbing, no storm sewer; it is not a “surfaced street ” acceptable according to the City’s specifications for residential street standards. The *977 Town’s residents on Fisher Road use the City’s sanitary sewer.
The Town’s 1,400 feet of Fisher Road formerly was an Erie County road which reverted to the Town when the county abandoned it; it is landlocked by the east line of the City’s 1.000 feet and by the west line of the Thruway.
Plaintiff’s plant, that manufactures toasted bread crumbs for the dog-food industry, is located on the south side of Fisher Road in the Town west of the Thruway; trucks making deliveries to and from plaintiff’s plant must be driven upon the City’s 1.000 feet of Fisher Road to get to the only connecting through highway, Abbott Road, otherwise plaintiff’s plant is landlocked.
Snowplowing, refuse collection, salting, ditch and roadside right of way maintenance, repairs, school buses, service to sewers and water mains, fire trucks, and police protection west of the Thruway can be provided residential and maufacturing taxpayers only by the Town’s highway, police and other service departments entering Fisher Road and seven other parallel roads from Abbott Road in the City. Nine paper streets, dedicated to but not accepted by the Town, are similarly so situated. Many of these service trucks when loaded exceed five tons.
Prior to April 15, 1965, no ordinance or other law limited the weight of traffic on Fisher Road, which had been a through street from the City to the Town for all kinds and weights of traffic for over 40 years before the Thruway was built in 1957.
The City has no ordinance, truck routes, only weight-limit ordinances covering some of its streets. Abbott Road is used as a truck route.
The Town’s attorney advised the Town inter alia that the City roads could be used to service this area because they were all the Town had to reach Fisher Road and the other roads nearby.
Since 1941 to 1957, when the Thruway was built, the vehicular traffic over Fisher Road from Abbott Road to Orchard Park Road included all sizes and weights of trucks that passed at least a dozen times a day. Since 1941, the Town end of Fisher Road was smooth, the City end was always bumpy and wavy. After 1957, the barriers at the Thruway prevented many trucks from using Fisher Road.
Before the Thruway was built, Fisher Road crossed over all railroad rights of way at grade, having an electrical system to regulate traffic. The Thruway has a clearance under it, near the dead end of Fisher Road, about 23 feet in height. A tractor-trailer needs about 12 feet of clearance. This clearance could have been built under the Thruway so that it would *978 not be necessary to close Fisher Road; but for some unknown reason this was not done. Presently, the clearance is at grade but not paved for vehicular traffic.
The parties’ counsel stipulated in open court to 14 matters of fact which are confirmed as found by the court as follows:
(1) That the area where plaintiff’s plant is located has been zoned for light manufacturing since March 18, 1963, by the Town and designated on the Town Zoning Map as M 1 on Exhibit No. 4.
(2) That the area in the City immediately west of the Town in the area abutting the manufacturing zone has been zoned residential by .the City since 1937.
(3) Fisher Road in the City extends 1,000 feet east of Abbott Road and is a City street and deemed a public highway.
(4) That the New York State Thruway was constructed in the area of Fisher Road in the Town in about 1957.
(5) That Fisher Road in .the City and Town was an Erie County highway prior to the construction of the Thruway in 1957.
(6) That Fisher Road is crossed over by the Thruway.
(7) That beginning at and about the Fall of 1963, truck traffic on Fisher Road leading to plaintiff’s building housing the three corporations known as Bakery Salvage Corporation, Sterling Bag and Burlap Co., and Niagara Trading Co., would amount to about four daily round trips.
(8) That at the present time, said truck traffic is about eight or nine trucks per day on a round-trip basis to the said premises on Fisher Road and the said three corporations, about 50% being tractor-trailer type and 50% varied truck traffic.
(9) That many children of school age live in the homes on Fisher Road and occasionally play in the street.
(10) That there are 12 houses in the Town and 26 houses in the City, on Fisher Road, and they are mostly owner-occupied, having been built prior to 1963.
(11) That most homes on Fisher Road have cracks in the plaster of the walls and/or the cellars.
(12) That the range of values of the houses on Fisher Road in the City is between $15,000 and $23,000.
(13) That the present width of the surfaced roadway of Fisher Road in the City is between 18 to 20 feet and makes passing of motor vehicles difficult.
(14) That there are no sidewalks on Fisher Road in the City.
The City Council has authorized the city clerk to publish for bids to pave the City’s 1,000 feet of Fisher Road as a residential, *979 not a heavy-duty, street; $40,000 is in the City budget for that purpose. Fisher Boad could be rebuilt in two weeks.
The State of New York has proposed a “ Southern Expressway ” that will tie in at the Thruway where it intersects Fisher Boad, proceeding south rather than southwest as does the Thruway now. It is reasonably certain to affect any proposed change of Fisher Boad.
In an action in this court entitled “ City of Lackawanna, plaintiff, against Norman C. Spalti, defendant,” a motion was made to enjoin enforcement of the City’s said traffic ordinance, to require the City to furnish an alternate route for the defendant Norman C. Spalti or Bakery Salvage Corporation (the plaintiff herein), and to stay the prosecution of said Spalti for violating this ordinance. Mr. Justice O’Donnell of this court denied the motion on May 27, 1965, stating: “It seems to be well settled that an injunction pendente lite will not be granted unless the traffic regulation is invalid on its face. Since this ordinance does not seem to be invalid on its face, whether it should be upheld will depend upon its reasonableness in the light of the evidentiary facts adduced upon a trial. (Zenith-Godley Co. v. Wiley, 279 App. Div. 498, mot. for lv. •to app. den. 280 App. Div. 759.) ” The order of denial was granted June 7, 1965, and an appeal was taken therefrom June 11, 1965, which is now pending
On July 7, 1965, an order of Mr. Justice Mabsh (then of this court, now of the Appellate Division, Fourth Department) ordered that pending the trial and determination of this action, “ the defendant City of Lackawanna, New York, be, and it hereby is, enjoined and restrained from enforcing and issuing summons in connection with ’ ’ said ordinance.
July 22, 1965, some City residents on Fisher Boad, Third Ward, formed a picket line that moved back and forth across the pavement to prevent trucks and tractor-trailers from driving on the City side. The traffic director, a captain in charge of the Traffic Division of the City, looked on during the picketing, while a City Councilman who resided in the Third Ward participated as a picket. This Councilman said that the City would close Fisher Boad, thereby putting plaintiff out of business.
The plaintiff, Sterling Bag and Burlap Co., and Niagara Trading Co., located in plaintiff’s plant are the only nonresidential occupants of the Town portion of Fisher Boad.
Plaintiff owns and operates two van trucks, one tractor and two trailers, weighing when loaded from 8 to 15 tons. Its trailers are 33 feet long, 8 feet wide, 11 feet 6 inches high. Other trucks and trailers make deliveries to plaintiff’s plant *980 about 4 times daily, 5 days weekly. Deliveries from its plant average one and one half per week by truck and trailer, and about the same by railroad cars at its siding. Plaintiff’s employees vary from 11 to 20 at one time.
Plaintiff paid a Lackawanna District No. 2, Town of West Seneca school tax of $2,111.29 and an Erie County tax of $1,455.08; also, New York State franchise, income, highway use, and sales taxes; also, Federal Government income and social security taxes. The town collects the school tax, distributing part to the 'City school district.
Cost of plaintiff’s land, plant and equipment was about $250,000; its annual gross business is about $200,000, both intrastate and interstate.
Plaintiff could not use smaller trucks and remain in business economically.
Generally, highway and street mean the same thing, to wit: 1 ‘ The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel” (Vehicle and Traffic Law, §§ 118, 148); roadway is “ That portion of a Highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder.” (Ibid., § 140.)
A “ Controlled-access highway” is “Every highway, street, or roadway in respect to which owners or occupants of abutting lands and other persons have no legal right of access to or from the same except at such points only and in such manner as may be determined by the public authority having jurisdiction over such highway, street or roadway.” (Ibid., § 109.)
A cul-de-sac, a dead-end road or street (Hickok v. Trustees of Vil. of Plattsburgh, 41 Barb. 130, 136) may be a public highway according to the weight of authority. (39 C. J. S., Highways, § 1, p. 916.) At common law, originally it could not be a public highway but by the 1860’s it became well settled in England and this State that it could. (People ex rel. Van Rensselaer v. Van Alstyne, 3 Keyes 35. See, also, People v. Kingman, 24 N. Y. 559, 568.)
By statute, a highway may have a special meaning for a defined purpose. The Vehicle and Traffic Law (L. 1959, ch. 775, as amd.) gives a general meaning for the chapter “ except where another definition is specifically provided in any title, article or section” for application therein (ibid., §§ 100, 118; see art. 9, Equipment of Motor Vehicles and Motorcycles, § 380, subd. 1, when transporting dangerous articles). The Highway Law defines highway as having a general (ibid., § 2, subd. 4) and special meanings (art. VUI-A-Town Highway Improve *981 ment Program, § 219, subds 1, 8). The Village Law (art. 14, tit. 1, § 306) gives “ highway ” a general meaning in the limited provisions for acquiring real property by a village for a public use. The Public Authorities Law (art. 2, tit. 1) defines highway as “the New York world war veterans memorial highway” (ibid., § 101), whereas title 9, New York State Thruway Authority, defines it as “ a public road or parkway, maintained by the state or a municipality ” (ibid., § 351). The Labor Law (art. 16, Explosives, § 451, subd. 2) defines highway as “ any public street, public highway, public alley or navigable stream, which is open for traffic.” The New York State Defense Emergency Act (§ 81, subd. 1 [L. 1951, ch. 784, § 81]) defines it as ‘ ‘ Any private or public highway, street, way, waterway, or other place used for travel”; and there are other statutory meanings (see Public Service Law, art. 1, § 2, subd. 30, par. [c]; Highway Law, art. 10-A, § 299, subd. 1).
No statute defines a cul-de-sac, or a dead-end road, street or highway, as such, except that section 125-a of the G-eneral Municipal Law, entitled “Posting signs on dead-end roads,” describes the duty of every municipal corporation charged with the duty of maintaining any dead-end street to post a sign 150 feet from that end; in addition, where the distance from the last intersecting street, except another dead-end street, exceeds 300 feet, a similar sign shall be erected on the right-hand side of the dead-end street immediately past the last intersecting street.
Here, the City was obliged to erect a. dead-end sign on the right-hand side of Fisher Road immediately past Abbott Road; the town was obliged to erect such a sign 150 feet from the dead end of Fisher Road. Thus, the statute imposed duties upon the City and the Town concerning Fisher Road, which were not performed as mandated.
A cul-de-sac never condemned, dedicated or otherwise accepted by the city, village or town is not a public street. (Sauchelli v. Fata, 306 N. Y. 123, 125.) Where the cul-de-sac is private, the abutting property owner has no easement therein. (Hofstra Coll. v. Board of Trustees, 145 N. Y. S. 2d, 323, 325, affd. 3 A D 2d 712.)
An implied easement of necessary ingress and egress to an abutting public street arises (Matter of City of New York [E. 177th St.], 239 N. Y. 119, 131), unless the abutting owner has ready access to another adequate street (Sauchelli v. Fata, 306 N. Y. 123, 125, supra). The denial of such an easement, without access, constitutes the taking of property without due process of law and without compensation, safeguarded by the *982 Federal and State Constitutions. (Cowan v. City of Buffalo, 247 App. Div. 591, 593; Matter of Smith v. Gagliardi, 286 App. Div. 873; Holmes v. State of New York, 282 App. Div. 278; Hofstra Coll. v. Board of Trustees, supra; Jacobsen v. Incorporated Vil. of Russell Gardens, 201 N. Y. S. 2d 183, 187.)
Section 341 of the Highway Law (art. 12) — State Routes, entitled “ Construction, improvement and designation of highways ”, provides for certain State highways that “ shall be * * * constructed or improved at the sole expense of the state, subject to the provisions relating to federal aid and to additional improvements requested by local authorities.” Such State highways include the 1 ‘ Southern Expressway ’ ’ in Erie County which shall extend, in part, ‘1 west of the village of Orchard Park, to a connection with the Erie section of the New York State Thruway, as determined by the superintendent of public works, said highway to be built with control of access ”. (Ibid., Erie County, subd. 14, par. 1.)
A street in a town is considered a private street until it is ‘ ‘ formally offered for cessation to the public and formally accepted as a public street by resolution of the town board, or alternatively until it has been condemned by the town for use as a public street.” (Town Law, § 278.)
“All lands which shall have been used by the public as a highway for the period of ten years or more, shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway, and the town superintendent shall open all such highways to the width of at least three rods.” (Highway Law, § 189, L. 1963, ch. 993, eff. Sept. 1,1963, reducing period of use from 15 to 10 years.)
No town shall issue a permit for the erection of any building unless a street or highway, giving access to such proposed structure, has been suitably improved to the satisfaction of the Town Board or Planning Board. (Town Law, § 280-a, subds. 1, 2.) Such “ access ” means that the plot on which the structure is to be erected abuts on such street or highway and has sufficient frontage thereon to allow the ingress and egress of 1‘ fire trucks, ambulances, police cars and other emergency vehicles;” a frontage of 15 feet shall be presumptively sufficient for that purpose. (Ibid., subd. 5.) No town ordinance enacted subsequent to the granting of such permit can nullify that right. (Matter of Long. Is. Light. Co. v. Griffin, 272 App. Div. 551, affd. 297 N. Y. 897.)
Subject to the Constitution and general laws of this State, every city is empowered “To lay out, establish, construct, *983 maintain, operate, alter and discontinue streets ”. (General City Law, art. 2-A, § 20, subd. 7.)
Since the Legislature has absolute control of all streets, the city, which owns the fee therein as trustee publici juris, shall keep them open for public use pursuant to legislative mandate. (City of New York v. Rice, 198 N. Y. 124, 128; People v. Grant, 306 N. Y. 258, 260.) Generally, cities may exclude heavy trucks from certain streets, leaving open to them other suitable streets. (Ibid., p. 263.) No easement by implication is created if another street is available. (Goldrich v. Franklin Gardens Corp., 282 App. Div. 698; Matter of City of New York [Varian Ave.], 242 App. Div. 378, 379. See, also, Coster v. The Mayor of Albany, 43 N. Y. 399, 414; Fearing v. Irwin, 55 N. Y. 486, 490; Commonwealth v. Kennedy, 129 Pa. Super. Ct. 149, 158, 159.) This alternate route should be adequate, safe and suitable. (Holmes v. State of New York, 282 App. Div. 278, 279; 13 Op. St. Comp., 1957, p. 54; Matter of Smith v. Gagliardi, 2 Misc 2d 1005, 1007, affd. 2 A D 2d 698; Gotham Sand Corp. v. Village of Roslyn, 20 Misc 2d 478, 481.)
The heaviest vehicle or combination of vehicles permitted on any highway or bridge in any county not wholly within a city is limited to 71,000 pounds or 35% tons. (Vehicle and Traffic Law, § 385, subd. 10.) The State Traffic Commission with respect to State highways may, “ Prohibit, restrict or regulate the operation of vehicles on any controlled-access highway or the use of any controlled-access highway by any pedestrian, horseback rider or vehicle or device moved by human or animal power ’ ’ (ibid., § 1621, subd. 2); and ‘ ‘ Exclude trucks, commercial vehicles, tractors, tractor-trailer combinations and trucks in excess of any designated weight from designed highways.” (Ibid., subd. 9.)
“ The legislative body of any city or village, with respect to highways (which term for the purposes of this section shall include private roads open to public motor vehicle traffic) in such city or village” (Vehicle and Traffic Law, § 1640, subd. [a]) may by ordinance, etc., ‘ ‘ Exclude trucks, commercial vehicles, tractors, tractor-trailer combinations in excess of any designated weight from designated highways ” (§ 1640, subd. [a], par. 5) and “ Establish a system of truck routes upon which all trucks, tractors, and tractor-trailer combinations having a total gross weight in excess of ten thousand pounds are permitted to travel and operate and excluding such vehicles and combinations from all highways except those which constitute such truck route system. Such exclusion shall not be construed to prevent the delivery or pick up of merchandise or other *984 property along the highways from which such vehicles and combinations are otherwise excluded. Any such system of truck routes shall provide suitable connection with all state routes entering or leaving such city or village” (§ 1640, subd. [a], par. 10). Any city or village may, with respect to such highways, ‘ ‘ Adopt such additional * * * ordinances * * * with respect to traffic as local conditions may require subject to the limitations contained in the various laws of this state ” (§ 1640, subd. [a], par. 15).
The Town Board of any town with respect to highways outside villages in any such town, but not including State highways (with certain exceptions) may by ordinance, etc., establish a system of truck routes (Vehicle and Traffic Law, § 1660, subd. [a], par. 10), prohibit, restrict or regulate controlled-access highways (ibid., par. 12); exclude trucks, etc. (ibid., par. 17); adopt additional reasonable ordinances, etc. (ibid., par. 20) as may cities and villages, as above stated.
Where an exclusionary traffic ordinance is not clearly invalid on its face, its reasonableness should be determined in the light of evidence adduced at a trial. (Zenith-Godley Co. v. Wiley, 279 App. Div. 498, mot. for lv. to app. den. 280 App. Div. 759; Associated Transp. v. City of Syracuse, 274 App. Div. 565, 568; Benco Transp. v. Incorporated Vil. of Brookville, 228 N. Y. S. 2d 38, 41.) ■
Municipal planning, with the myriad complexities of modern Federal, State, county, town, city and village governments, State-wide authorities such as the Thruway Authority, State-controlled public utilities such as a railroad and an electric corporation owning miles of rights of way, and private persons owning homes or places of business, inherently makes imperative the reciprocal use of forbearance, wisdom and consideration for the correlative powers, rights and duties of all such affected thereby; there shall be a reasonable balancing of conveniences.
This basic principle is singularly applicable to the case at bar which was contributed to, directly or indirectly, mediately or immediately, by the State of New York, County of Erie, the City, the Town, the Thruway Authority, the Lehigh Valley Railroad, the Pennsylvania Railroad, the New York Central Railroad, the Niagara, Lockport and Ontario Power Company, and the past and present owners of Fisher Road and its contiguous lands.
The City’s truck ordinance is directed primarily at the plaintiff. Since the plaintiff’s plant is in the Town and abuts the Town’s portion of Fisher Road, technically no deliveries can be made to it because the ordinance permits deliveries only on *985 Fisher Road in the City. Yet, as to usage and practice, the entire cul-de-sac of 2,400 feet in the City and Town shall be considered one street for ingress and egress by adjoining owners, although the 1,000 feet in the City is private, the 1,400 feet in the Town public. This ordinance refuses the plaintiff any other access route, nullifies the building permit and its benefits issued to the plaintiff by the Town, destroys the full enjoyment of the plaintiff’s necessary easement in and to Fisher Road in the Town, and deprives the plaintiff of property rights without due process of law and without the payment of just compensation. This ordinance, then, is void ab initio.
In the present posture of the pleadings and facts in this case the court may not direct the Town to furnish a truck route as prayed for by the City. Not only the plaintiff but the residents of the City and Town in that area west of the Thruway would benefit by an additional street or controlled-aecess highway. All interested and affected parties should unite, using mutual forbearance, and full co-operation, to relieve the land occupants and owners of their common problem.
This decision contains the essential facts.
Judgment is granted to the plaintiff declaring this ordinance void and enjoining its enforcement; and to the defendant Town dismissing the City’s cross claim, without costs.