THE TRUSTEES OF THE VILLAGE OF JORDAN *vs.* OTIS.

A way may be dedicated by the owner of land as a public highway, by an immediate act of dedication, and it will become a legal highway whenever it is laid out as such by the constituted authorities, who are charged with the duty of laying out highways.

But in this state the responsibility of making highways is devolved upon the commissioners of highways; and a road opened by an individual and used by the public less than twenty years, is not a highway within the meaning of the highway acts, until it has been laid out as such by the commissioners of highways or other public authorities upon whom the duties of commissioners of highways are devolved by law.

Repairs made upon such a road, by an overseer of highways, do not constitute a valid acceptance, for want of authority in him to bind the town.

Whether the owner can recall the dedication, before it is authoritatively accepted? *Quære.*

THE defendant in this action, in the spring of 1861, fenced up a street in the village of Jordan, Onondaga county, called Water street, and this action was brought to recover a penalty of five dollars, imposed by statute, for such obstruction. The suit was brought in a justice's court. The defendant pleaded title, and the action was brought into this court, and tried by the court without a jury, at a circuit court held in the city of Syracuse in October, 1861. The court found for the plaintiff, and judgment was entered accordingly. The defendant appealed to the general term.

By the 23d section of the charter of the village of Jordan, (*Laws of* 1861, *p.* 154,) the village of Jordan was made a separate road district, and the trustees of the village of Jordan were made commissioners of highways therein. The road in question was plotted out in 1845, by Isaac Otis, the father of the defendant, and opened and traveled through most of its length, until 1860. The defendant came into the possession of the premises in 1847 or 8. In 1860 the pathmaster repaired it, so that the public could pass through it, and soon after, in the same season, the defendant shut it up. For this act of the defendant the trustees brought this action. An objection was taken that the suit should have been brought

in the individual names of the trustees; but the objection was overruled.

The following are the findings of fact and law, as drawn up and printed in the case.

First finding. That the premises upon and over which the defendant placed the obstruction complained of, was by the grantor dedicated to the public many years before the commencement of this suit, and that such dedication was subsequently recognized by the acts and declarations of the defendant in this suit.

Second finding. That the dedication was, prior to the commencement of this action, accepted by the public by repeated and long continued use of the premises, or some part of them, as a public highway for travel and passage over the same, and by the same having to some extent been worked and repaired by the public authorities of the village of Jordan.

To that portion of the second finding which declares "that such dedication was accepted by the public," the counsel for the defendant in due time excepted.

Third finding. That the defendant obstructed the use of the said highway by building and maintaining a fence directly across the same, in such a way as wholly to prevent the use of the same as a highway by the public.

Fourth finding. That the premises claimed in the complaint in this action to be a public highway, have not, nor has any portion of them, *been laid out as such by the public authorities.*

Fifth finding. That the only work or repairs purporting to have been bestowed on any part of said premises as a public highway, consisted in the leveling down of the south portion of the foundation of the slaughter house erected by Carson & Wilson, by Elijah F. Wright, the pathmaster, in 1860, so as to admit of public travel over the portion thus leveled.

Sixth finding. That the only authority which Weed had to cause work or repairs to be made on said premises as a

highway, consisted in a resolution of the board of trustees of said village, in general terms, committing to the trustees of each ward the care of the highways in the ward in which they resided, and as one of the trustees who were commissioners of highways by the act of incorporation.

Seventh finding. That in the year 1845, and immediately upon the giving of the deed by Isaac I. Otis to Carson & Wilson, they erected a slaughter house on the premises conveyed to them, the foundation of which extended on to the north side of the land reserved in their deed for a road, and to within about one rod of the south side of the piece thus reserved; and that no portion of the premises covered by such foundation was ever used as a public highway, until the south portion of said foundation was leveled by the pathmaster in 1860.

Eighth finding. That a considerable portion of the north side of the land reserved as a road in the deed from Isaac Otis to Carson & Wilson, and inclosed in said foundation, remained covered by said foundation until May or June, 1861, and which portion thus remaining so covered has never been used or worked as a public highway.

Ninth finding. That at the time of the acts and declarations of Isaac Otis constituting a dedication, as found by the court, there was no highway or public place west of the premises sold to Carson & Wilson, which the street or highway thus dedicated could intersect or terminate at, and the street thus dedicated terminated upon the premises of said Isaac Otis.

Tenth finding. That at the time of the giving of the deed by Isaac Otis to Carson & Wilson, there was no way of ingress or egress into and out of the premises of said Otis and west of the premises so conveyed by said Otis, except through these premises thus conveyed, or through the space thus reserved as a road in said deed.

From the facts as above found, the court found as conclusions of law :

1st. That the premises alleged in the complaint to be a highway, were dedicated to the public as a public highway by Isaac Otis. 2d. That the public accepted such dedication. 3d. That the plaintiff is entitled to recover the penalty of five dollars claimed in the complaint. To each of which findings the counsel for the defendant duly excepted.

*Wm. Porter,* for the appellant.

*D. Pratt,* for the respondent.

*By the Court,* MORGAN, J.   This action is brought by the trustees of the village of Jordan, against the defendant, to recover the penalty of five dollars for obstructing a highway. Section 102 of the highway act (1 *R. S.* 521) declares that whoever shall obstruct any "highway, or shall fill up or place any obstruction in any ditch constructed for draining the water from any highway, shall forfeit for each offense the sum of five dollars." And by § 131, (*Id.* 525,) the forfeiture must be "recovered by the commissioners of highways of the town in which the offense shall be committed ; and when recovered, shall be applied by them in improving the roads and bridges in such town."

The village of Jordan was made a separate road district, by chapter 82 of the laws of 1861, (§ 23, *p.* 154,) and the duties of commissioners of highways "devolved upon the trustees of said village." There is great doubt whether the action is properly brought in the corporate name of the village. But as this objection was not pressed on the argument, it will not be considered in the decision of the case.

The principal question arises out of the difficulty of determining whether the alleged highway was, at the time of the obstruction, a public highway within the meaning of the revised statutes, containing "regulations and penalties concerning the obstruction of highways, and encroachments thereon." (1 *R. S.* 521.) By section 100 of the act rela-

tive to highways and bridges, (Id.) it is enacted that "all public highways now in use, heretofore laid out and allowed by any law of this state, of which a record shall have been made in the office of the clerk of the county or town, and all roads not recorded, which have been or shall have been used as a public highway for twenty years or more, shall be deemed public highways, but may be altered in conformity to the provisions of this title."

Section 201 then provides, that "it shall be the duty of the commissioners of highways to order the overseers of highways to open all roads to the width of two rods, at least, which they shall judge to have been used as public highways for twenty years."

It is admitted that the way in question was never laid out or opened by the commissioners of highways or other public authority, or put upon record, in conformity to the provisions of the revised statutes. Nor has it been in use for twenty years. The most that is claimed for it is, that the defendant's father dedicated it to the public as a highway, in 1845, and that it has been used more or less for public travel until the defendant shut it up, in 1861. On one occasion the street commissioner directed it to be repaired at the north end, but without any direction from the trustees of the village. To show that the defendant's father intended to dedicate it to the public as a highway, it was also proved that he sold off some lots adjoining it, and in one or more of his deeds reserved the land for that purpose.

The findings as drawn up are somewhat contradictory. In one it is said, that "the dedication was accepted by the public by repeated and long continued use of the premises, or some part of them, as a public highway for travel and passage over the same, and by the same having to some extent *been worked and repaired by the public* authorities of the village of Jordan. In another finding it is said, "the only work or repairs purporting to have been bestowed on any part of the premises as a public highway, consisted in the

leveling down of the south portion of the foundation of the slaughter house erected by Carson & Wilson, by Elijah F. Wright, the pathmaster, in 1860, so as to admit of public travel over the portion thus leveled." And "that the only authority which Weed (one of the trustees) had to cause work or repairs to be made on said premises as a highway, consisted in a resolution of the board of trustees of said village, in general terms, committing to the trustees of each ward the care of the highways in the ward in which they resided, and as one of the trustees who were commissioners of highways by the act of incorporation."

Weed, it seems, as one of the trustees, directed Wright (the pathmaster) to do the work. This slaughter house occupied a portion of the alleged road until 1860. It can hardly be said that this single act of the pathmaster can be regarded as the action of the public authorities of the village of Jordan, so as to bind the corporation to lay out this road as a public highway, and impose upon the village the burden and responsibility of maintaining it.

There is another finding which at least requires explanation. It is found that at the time the father of the defendant gave deeds, reserving a portion of the premises in question for a road, and "at the time of the acts and declarations of Isaac Otis constituting a dedication as found by the court, there was no highway or public place west of the premises sold to Carson & Wilson, which the street or highway thus dedicated could intersect or terminate at, and the street thus dedicated terminated upon the premises of said Isaac Otis."

The map, which is made a part of the case, carries the road from Beaver street to Skaneateles street; but it may be that the road was not used, except to go to the slaughter house, a short distance from where it now terminates, upon Beaver street. With this finding in the case, unless there was a subsequent dedication, I think there must be a new trial, upon the authority of *Holdane* v. *The Village of Cold Spring*, (23 *Barb.* 103.) It was there held that a *cul de*

*sac,* or street which is closed at one end and only communicates with a public road at the other, is not susceptible of dedication to public use as a highway. But the finding does not cover the time the premises were used by the defendant.

If the defendant, after he owned the premises, extended the way through to another street in pursuance of the original intention of his father, then I can see no objection to holding, that as to the defendant, he had done all that was necessary to conclude himself; and the main question will be, whether it was necessary for the trustees to lay it out as a public road in accordance with the requirements of the statutes, before it could become a highway within the meaning of the section already quoted, and under which it is sought to make the defendant liable for obstructing it.

There is no doubt but what a way may be dedicated as a public highway by an immediate act of dedication, and that it will become a highway in fact and in law whenever it is laid out as such by the constituted authorities who are charged with the duty of laying out highways. This would be an acceptance of the dedication by those who are empowered to act for the public in that behalf. But in this state, the responsibility of making highways is devolved upon the commissioners of highways; and it certainly cannot be allowed that individuals, by a simple act of dedication, can impose upon the public the burdens and responsibilities of maintaining a highway.

If an individual can make a highway by an act of dedication, the duty immediately devolves upon the public authorities to keep it in repair; and the location of highways would no longer be at the option of the commissioners. It has not been seriously contended that the owner of lands may make a highway through them by a mere act of dedication, but it has been asserted in one or two cases, decided in this state, that after the public begin to travel upon it as a highway, such use by the public is to be regarded as an acceptance of the dedication. Such was the view of Justice Wright at the

circuit, in the case of *Clements* v. *The Village of West Troy,* (10 *How. R.* 199,) and approved by Justice Smith in *Bissell* v. *New York Central Rail Road Company,* (26 *Barb.* 635.) Justice Smith says that "express *acceptance* by the public authorities is not requisite, nor *user* for a length of time sufficient, to create a title by prescription. But there must be an *acceptance* or *user.* User for a short time, express and unequivocal, treating the strip of land as a street or highway, is sufficient." Other cases suggest the same doctrine, but I think the case of *The City of Oswego* v. *The Oswego Canal Company* (2 *Seld.* 257) announces a doctrine quite inconsistent with these views, and much more conformable to the laws of this state in relation to highways.

In that case no stress whatever is laid upon the *use* of the road by the public as constituting a valid acceptance of the dedication. Ruggles, Ch. J., in delivering the opinion of the court, says : " The power of laying out, altering and discontinuing highways has been conferred exclusively on the commissioners of highways of the respective towns. It has been their duty to cause to be described and recorded, highways not already on record," &c. " The whole structure of the highway acts forbids that the town is bound to accept and keep in repair any road which an individual may think proper to open through his own land, although he may dedicate it to public use in such a manner as to preclude him from shutting it up. Streets and roads dedicated by individuals to public use, but not *adopted by the local public authorities, are not highways within the meaning* of the highway acts, and there is no law by which any one can be compelled to keep them in repair."

In my opinion, this case holds, in substance, that a road opened by an individual and used by the public less than twenty years, is not a highway within the meaning of the highway acts, unless it has been laid out as such by the commissioners of highways, or other public officers upon whom the duties of commissioners of highways are devolved by law.

The right of determining the question cannot be exercised by anybody else, for the power, says Ch. J. Ruggles, "has been conferred exclusively upon the commissioners of highways."

Whether the dedication can be recalled before it is authoritatively accepted, is a question of considerable difficulty, and one upon which it is unnecessary now to express an opinion.

It is only necessary to say, that a road cannot be imposed upon the public authorities by the act of the owner of the lands through which it passes; and that such road does not become a public highway because it is used as such by the public, until the proper authorities proceed to lay it out as such, in the mode pointed out by the statutes of this state. Whatever rights individuals may acquire to pass over it, or adjoining owners may claim in respect to the dedication, the commissioners of highways cannot be called upon to repair it as a public highway; nor can they exercise any legal control over it, until they have accepted it in the mode prescribed by statute, and thereby made it a legal public highway. Nor can they sue the owner for shutting it up, having no legal control over it until they have taken the proper steps to constitute it a public highway, subject to their supervision and control as public officers.

And where the action of certain officers is necessary to do a valid act, like the making of a public highway, they are not competent to delegate the authority to an inferior officer, or to a pathmaster; and his act in making repairs upon it is not the act of the commissioners of highways, so as to make it a public road within the meaning or intention of the statutes of this state. In the *State of Maine* v. *Bradley*, (40 *Maine Rep*. 154,) the court held, that a way by dedication of the owner of the land does not become a *public highway* without user for twenty years, or an acceptance on the part of the town; and that repairs made upon it by a surveyor of highways do not constitute such acceptance, for want of authority to bind the town. (*See also Kelly's case*, 8 *Grat.* 632; and *Hyde* v. *Jamaica*, 27 *Verm. Rep.* 443.)

In the case of the *People* v. *Lawson,* (17 *John.* 277,) the court expressed an opinion in accordance with these views. By the twenty-fourth section of the "act to regulate highways," passed March 19, 1813, (2 *R. L.* 277,) it was enacted that when any roads had been used as public highways for twenty years next preceding the 21st of March, 1797, the same should be deemed public highways, although no record thereof had been made.

The road in question did not appear to have been used as such for twenty years preceding the 21st of March, 1797, but it was used as a highway at least from 1792 to 1813, twenty-one years. It was then shut up by the trustees of Newburgh, who had authority for that purpose.

One question was, whether it had been legally discontinued; but the court first discuss the question involved in this case, and express an opinion that a road used as a common highway for less than the statutory time and not recorded, is not a public highway within the meaning of the act relative to highways, so as to render an obstruction of it a nuisance.

As the trustees of the village of Jordan had taken no action to make this road a public highway, before it was shut up by the defendant, it cannot, I think, be regarded as a public highway within the meaning of the statute under which the action is brought. The trustees are not bound to make it a public highway—or to repair it as such—and until it is legally laid out by them and has passed under their legal control, the trustees cannot sue the defendant for obstructing it.

The judgment must be reversed, and a new trial granted; costs to abide the event.

[OSWEGO GENERAL TERM, July 8, 1862. *Mullin, Morgan* and *Bacon,* Justices.]