TALMAGE and others, commissioners &c., *vs.* HUNTING.

Subdivision three of section one of the act of February 23, 1830, regulating highways in the counties of Kings, Queens and Suffolk, makes it the duty of the commissioners of highways " to cause such roads used as highways as shall have been laid out, but not sufficiently described, and such as were used as highways for twenty years or more next preceding the 21st of March, 1797, and which shall have been worked and used as such constantly for the last six years, but not recorded, to be ascertained, described and entered of record in the town clerk's office." *Held* that in executing this injunction of the statute the commissioners are not to lay out a new road, or to enlarge the limits of an old one.

The lands cannot be taken for either purpose without due process of law, and without awarding compensation therefor to the owners.

The commissioners are to ascertain the length and breadth, the lines and limits, of a road which had not been formally laid out, but which had become a public road by dedication of the landowners to be presumed from immemorial use; to incorporate a description of such length and breadth, lines and limits, in the form of an order; and enter it of record in the town clerk's office, as a memorial for present and future use.

Where commissioners, instead of ascertaining and making a record of the lines, length, breadth, courses and distances of an existing road as it had existed for twenty years before the 21st of March, 1797, alleged in their order that difficulties had arisen, as to the boundary lines of the street; that they had heard testimony and collected the circumstances relative thereto, and proceeded to survey, stake out and record such width of highway as appeared to be necessary for the public convenience; and they surveyed and staked out the road, not as it had been used and then actually existed; nor as the landowners had dedicated it; but of such width as appeared to be necessary for the public convenience; *Held* that the commissioners had no power to make such an order, and the same was void.

MOTION for judgment on a verdict taken at the circuit, subject to the opinion of the court at general term.

*W. P. Buffitt,* for the plaintiffs.

*George Miller,* for the defendant.

*By the Court,* BROWN, J. The plaintiffs are commissioners of highways of the town of Easthampton, in the county of Suffolk, and they claim to recover from Nathaniel Hunt-

ing, the defendant, $275, penalties incurred by him for the omission to remove certain encroachments alleged to have been made by him upon the south side of a street or public highway called Tower street, running through the village of Easthampton, in said town, pursuant to an order made by them to that effect, of the date of June 11th, 1859, and the verdict or certificate of a jury found thereupon. The street runs northeasterly and southwesterly, the lands of the defendant lying on the southeasterly side thereof. The jury found the encroachment to be a fence erected by the defendant in front of the dwelling house and land occupied by him, and projected eight feet into the street at the southwesterly end of the fence, and eight feet nine inches at the northeasterly end thereof. The answer put in issue most of the material facts set out in the complaint, and at the trial before Mr. Justice EMOTT, at the circuit held for the county of Suffolk, in June, 1862, a verdict was taken for the plaintiffs for $275, subject to the decision of the court at general term.

We have recently had occasion to consider some of the legal questions involved in this action. In *Doughty* v. *Brill,* (36 *Barb.* 488,) we held that there can be no proceedings by commissioners of highways for an encroachment, in a case where the highway has not been laid out and recorded in conformity with the directions of the highway act. The road had not been surveyed, and no record thereof had been filed in the clerk's office. In rendering the decision we said: " The distinction between public highways laid out and allowed by law and public highways which become such by a user of twenty years and upwards, is recognized and maintained in the various provisions of title 1, chapter 16, in regard to bridges and highways. Thus, in the third subdivision of section one, it is made the duty of the commissioners of highways to cause such of the roads used as highways as shall have been laid out and not sufficiently described, and such as shall have been used for twenty years but not recorded, to be ascertained and described and entered of record in the town

clerk's office. So, also, section 104 declares "all public highways now in use, heretofore laid out and allowed by any law of this state, of which a record shall have been made in the office of the clerk of the county or town, and all roads not recorded which shall have been used as public highways. for twenty years or more, shall be deemed public highways, but may be altered in conformity with the provisions of this title." The first class become public highways by force and authority of proceedings had under the statute, and which assure compensation to the owners of the lands taken for that purpose, while the latter class become such by force of a rule of the common law, which presumes a dedication or grant from the public use for twenty years and more. The distinction is substantial and material. It was present to the minds of those who framed the law." There are some distinctions between the case referred to and that under consideration, which should be noticed. In the former the road had not been originally laid out, but became such by a user of twenty years and more. Nor had it been " ascertained, described and entered of record in the town clerk's office," as required by the third subdivision of section 1, title 1, chapter 16, revised statutes. In the present case the plaintiffs produced and read in evidence an order made by the commissioners of highways of the town of Easthampton, of the date of April 1st, 1833, which is claimed to have ascertained, described and entered of record in the town clerk's office " the highway in question, known as Tower street, in conformity with the third subdivision of section one of the act of the 23d of February, 1830, regulating highways, &c. in the counties of Kings, Queens and Suffolk, called the Long Island highway act. It had not been originally laid out under the highway acts, but had become a public highway by a user of twenty years before the 21st day of March, 1797, and worked and used for six years before the passage of the act. There is, also, a material difference in the language of these two acts in regard to the proceedings of the

Talmage *v.* Hunting.

commissioners for an encroachment. In the general highway act, section 107 authorizes the commissioners to proceed "when a highway shall have been laid out and the same has been or shall be encroached upon." In the Long Island act the same authority is given "in every case where a highway has been or shall be encroached upon." Omitting the qualification that the highway shall have been laid out.

Subdivision three of the first section of the latter act makes it the duty of the commissioners "to cause such roads used as highways as shall have been laid out but not sufficiently described, and such as were used as highways for twenty years or more next preceding the 21st day of March, 1797, and which shall have been worked and used as such constantly for the last six years but not recorded, to be ascertained, described and entered of record in the town clerk's office." In executing this injunction of the statute the duties of the commissioners were quite plain. They were not to lay out a new road, or to enlarge the limits of an old one. The lands could not be taken for either purpose without due process of law, and without awarding compensation therefor to the owners. The commissioners were to ascertain the length and breadth, the lines and limits of a road which had not been formally laid out but which had become a public road by dedication of the landowners, to be presumed from immemorial use, to incorporate a description of such length and breadth, lines and limits, in the form of an order, and enter it of record in the town clerk's office, as evidence and a memorial for present and future use. In the case of *The People* v. *The Judges of Courtland County*, (27 *Wend.* 491,) the commissioners, it appeared, in performance of this same duty, altered the road, carrying one of the lines thereof a rod and a half into the field of the adjoining owner. Mr. Justice Bronson, in rendering the opinion of the court, says : " The legislature has enacted what the common law had already declared, that roads, although not recorded, which have been used as public highways for twenty years, shall be deemed public

highways. (1 *R. S.* 521, § 100.) And it is the duty of the commissioners in the several towns to cause such roads to be ascertained, described and entered of record in the town clerk's office. (*Id.* 501, *sub.* 3.) This provision does not authorize the commissioners to say what was originally intended, either by the owner of the soil or any one else, in relation to the width or location of the road, any further than such intention has been manifested by permitting the way to be used. It is a power in relation to the road as it actually exists and has existed for the last twenty years. It does not authorize the commissioners to create or enlarge, but only to perpetuate the evidence of, a public right. But the extent and the fact of dedication depend upon the user, and the public must take *secundum formam doni.*" There is reason to think that the commissioners who made the order of the 1st of April, 1833, upon which the plaintiffs rely, mistook their vocation. In place of ascertaining and making a record of the lines, length, breadth, courses and distances of an existing road as it had existed for twenty years before the 21st March, 1797, they say in the order that difficulties had arisen as to the boundary lines of the street; that they had heard testimony, and collected the circumstances relative thereto, and proceeded by virtue of the laws of the state regulating highways in Suffolk county, passed February 23, 1830, to survey, stake out and record such width of highway as appears to be necessary for the public convenience." They surveyed and staked out the road, not as it had been used and then actually existed, not as the landowners of Easthampton had dedicated it, but of such width as appeared to be necessary for the public convenience. This they could not do; for, as we have already seen, they had no such power.

In making the examination and survey, it appears by the order that the commissioners set stones or monuments in what they adjudged was the centre of the street, and then run the exterior lines 3 rods 92-100ths, distant therefrom in a southeasterly and northwesterly direction; thus making the street

a little short of 8 rods in width. I will not say that the landowners in a rural town may not dedicate their lands to the uses of a public street 8 rods in width, by acquiescence in a public user for travel for the period of 20 years, but I think I may safely say that the presumption is greatly against such a width of road, because it cannot be needed for the purposes of travel. And the proof of the user to the extent claimed should be clear and unequivocal before the presumption is overcome. If we turn to the testimony we shall see the precise character of the use relied upon to establish the public right over that part upon which the defendant is said to have encroached with his fence. David H. Hunting, a witness examined by the defendant, testified that he made the survey of the street and premises. "As I have run the line," he said, "the defendant's fence seemed to be on the highway as it was at the date of the order of the commissioners. It was fully occupied by him up to the line. It was never passable the whole length. It was never used as a highway. The commissioners' line ran into the garden, dwelling house, carpenter's shop and hog-pen of the premises I now occupy, and into six different buildings, and five feet into the church. My house has been there from time immemorial. George Hand owns north of the defendant; the line ran through his door and through his hog-pen and hog-house. The commissioners' line went through the buildings of four individuals, and through the enclosed premises of nine individuals. I am not aware of any attempt to open the road on the south side until within six years." It appears by the map that the premises of this witness adjoin those of the defendant on the west. Sylvanus M. Osborn, who made the survey and was sworn for the plaintiffs, testified that the line of survey cut David Hunting's house, one house on the other side, and Mr. Mulford's barn. These facts show that the commissioners did not intend to run and make a record of the lines of the road as they existed and had existed for the 20 years, but to run new lines and make the street of a width suitable for the pub-

lic convenience. The defendant's premises have been owned and occupied by himself and his ancestors for 150 years, and there were a number of witnesses examined who had known and remembered them for 60 years and upwards. They proved, beyond dispute, that while there was a door yard fence inside or southerly of the fence complained of as an encroachment; that outside of this door yard fence the *locus in quo* was constantly occupied for domestic uses, such as piling wood, depositing ashes and burying vegetables. This continued, according to the testimony of Mrs. E. Dayton, a daughter of the defendant, down to the year 1850. These uses were inconsistent with the idea of a dedication, and adverse to the claim to use the premises as a public highway. It was not indispensable to the defendant's right to hold the land free from the public easement that it should have been enclosed with a permanent fence. A man may occupy his land without fencing it. He is not bound to fence along the line of the street. The omission to do so, for a great length of time, would doubtless be some evidence of an intention, under the circumstances of the present case, to grant to the public a right of passage over it. But when the land is constantly devoted to domestic uses the want of an enclosure amounts to nothing, because there is a constant, notorious and known assertion of the right of ownership over it.

In conclusion, we think the plaintiffs' action cannot be maintained, and judgment should be entered, upon the verdict, for the defendant.

[DUTCHESS GENERAL TERM, May 11, 1863. *Brown, Scrugham* and *Lott*, Justices.]