Hardin, J.
The principal question in this case arises upon the defence interposed, alleging that the fence in question was an encroachment upon the street. The defendant has established by the evidence, that an order was made by himself and his associate trustees of said village, requiring the plaintiff to remove the fence in question, and that such order, with a notice thereof, was served upon the plaintiff several days prior to the removal of the fence by the defendant.
The trustees of said village are expressly declared to be “commissioners of highways for said village, and possess all the powers given by any law of this State to the commissioners of highways of towns, as far as the same may be applicable.” (Section 1 of title 4 of Charter.)
The same section declares the said village to be a separate road district, and exempts it from the superintendence of the commissioners of highways of the town of Skaneateles.
There is ho record of the town authorities produced, showing that the street in question was ever laid out as a highway.
The evidence of user in respect -to the highway in question, establishes, quite clearly, that the fence of the *348 plaintiff is not on that part of the highway which has . been occupied by the public ; that the practical use and occupation of that part of the plaintiff’s enclosure claimed to be an encroachment has not, to any material extent, been changed since the opening of a highway in ■ front of his premises.
The defendant seeks to show the encroachment by producing evidence of the location of the Seneca turnpike, and by establishing that the village has succeeded to the rights and privileges of the turnpike, and that taking the north line of the turnpike as the north line of the street, it would appear that the encroachment was made out, as named in the order made by the trustees in respect to it.
By an act of the legislature passed April 1,1800, a cor- • poration was created by the name of “The President and Directors of the Seneca Road Company,” and given power to construct a road from the dwelling of “John House' in the village of Utica to the village of Cayuga, and from thence to the court house in Canandaigua, observing as nearly the line of the State road as the nature of thó ground will allow,” and for that purpose the right to acquire personal and real property, not exceeding in value $12,000.
The said act also provides for the performance by. commissioners therein named, of certain duties devolved upon them, and the corporation was authorized to “ enter into any land” * * * “when its officers deem it necessary to deviate from the Genesee road, to make and complete said road, and to lay out and survey and labor on such routes or tracts as shall be most eligible for a good and sufficient road between the places aforesaid, and contract with the owner or ovmersfor the purchase of so much thereof as may be necessary for making said road.” And in case of disagreement between the parties respecting damages to be done to said lands, the officers are authorized to apply to one of the judges of *349 the common pleas in the county where the lands were situated, to appoint commissioners to assess damages for any lands to be taken by said company.
• The commissioners were required to cause notice to be given to the owner or owners of any lands so to be taken, and after hearing them, &c., “to make an inquisition under their hands and seals, stating the amount of damages, if any, which any owner or owners or occupants of any parcel of land used or to be used for said road, hath or have sustained or shall sustain, which requisition shall be acknowledged by the commissioners signing the same, and filed with the clerk of the county in which such damages may be done;” and upon paying said sums are authorized to hold the lands to their heirs and assigns forever. •(§!.)
It was further enacted, “that the said road shall be six rods in width,” and the company was directed to construct the same so that there should be an arch in the centre.
Subsequent to the passage of the incorporating act, the company began the construction of the turnpike, and about the year 1804 opened the same through the village of Skaneateles, along the street now in question. In the year 1806 the act was amended, and among the provisions inserted, the legislature provided, “that the centre of the arch of the road already .made by said company, * * * shall be taken and adjudged to be the centre of the road.” (§ 10 of the act of 1806, p. 107.)
By section 8 of this act of 1806, the company was authorized to remove fences, upon giving twenty days’ notice to the owner or occupant, which were built or might be built within the limits of said road. It is quite obvious from the evidence taken in this case, that the premises now occupied by the plaintiff were occupied before the construction of the road in front of the premises, and the defendant has not undertaken to establish by evidence the actual location, by any record evidence, *350 of the turnpike at the place where it passes in front of the premises in question.
There is no evidence to indicate an actual sale of the lands for the turnpike, nor of any acquisition thereof by it under the provisions of the original act, or the amendment thereof. There is a conflict of evidence as to where the north line would be, of the turnpike, opposite the plaintiff’s premises. The defendant relies upon his evidence given to show the location of the centre of the arch ; but suppose the company constructed their road, and never, by purchase or proceedings under their charter, actually acquired title to six rods ; shall it be said that it had the title by virtue of the declaration found in section 10 of the act of 1806 ? The act provides for two methods of making title, and shall it be said that the company, by the mere construction of their arch, can become possessed of three rods either way from it? Such effect cannot reasonably be given to section 10 of the act of 1806. There being no record evidence produced, of the north line of the turnpike, at the premises of the plaintiff, the defendant has not established the north boundary of the turnpike by producing oral evidence of the points at which he found the centre of the arch at the time of the survey by the village authorities in 1850.' The declaration found in section 10 of the act of 1806, was not intended to effect a transfer to the company of the title to land, which it had not obtained in one of the prescribed methods. The title to lands is not thus “adjudged and taken” from one party and vested in another.
To determine the boundaries of the lands belonging to the turnpike company, more satisfactory evidence must be produced than -such as is furnished by surveying three rods either way from the centre of the arch. (Peckham v. Henderson, 27 Barb. 207. 46 id. 561.)
The evidence in this case wholly fails to establish that this road, opposite the lands of the plaintiff, was laid out, *351 and no record of the same is produced. In Doughty v. Brill, (36 Barb. 488,) it was held “that there can be no proceedings by commissioners of highways for an encroachment upon a highway, in a case where the highway has not been laid out, and recorded in conformity with the directions of the highway act;” and further, “that the fact that a road has been used as a public highway for twenty years or more, will not give the commissioners jurisdiction to proceed against an individual for an encroachment thereon by fences, unless such road has been laid out and recorded as a public highway.” This same case was subsequently affirmed by the Court of Appeals. (3 Keyes, 612.) Bockes, J., delivering the opinion, expressly approves of the opinion found in 36 Barbour, 488, and adds that the reasoning, thereof was approved by the Court of Appeals, in Talmage v. Hunting, (29 N. Y. 447.)
In Devenpeck v. Lambert, (44 Barb. 598,) the case in 36 Barbour is quoted approvingly, and the distinction shown to exist between the statutes in respect to encroachments, and the one relating to obstructions, and the conclusion is reached that the latter statute gives a right of action for obstructing a road that exists merely by user.
The reasoning of Justice Morgan, in Trustees of Jordan v. Otis, (37 Barb. 50,) decided by the General Term of this district, July, 1862, is in harmony with the cases already quoted, The case of Chapman v. Gates, (46 Barb. 318,) cited by the learned counsel for the defendant, was tq recover for obstructions to a highway, and the conclusion of Bacon, J., that the plaintiff was entitled to recover the penalties given for an obstruction, though there was no proof of a record, upon the evidence, simply,, “that the highway had been worked and used by the people as a public highway, and regarded as such for fifteen years before the defendant obstructed, ’ ’ *352 is not inconsistent with the other cases, as is shown by the court, in 44 Barbour, 598.
Section 15 of title 3 of the act incorporating the village represented by the defendant, in respect to the duties and powers of the trustees, is as follows: “To survey the boundaries of said village, to survey and determine the boundaries of the streets of said village, and to make and establish a map thereof. and file the same with the clerk, and to designate and alter the name or names of said streets, or either of them, as often as they may deem expedient.”
It is urged, in behalf of the defendant, that, by virtue of the above provision, the trustees, on the 19th day of August, 1871, determined the boundary of the street in question, and that the encroachment existed to the extent described in the order made by them at that date; and that their act was “judicial,” and conclusive upon the question of the boundary of the street, and that the encroachment existed. But this view of the defendant’s case cannot aid him, It must be borne in mind that the plaintiff’s fence was substantially in the same place where one had been maintained for upwards of seventy years prior to its removal by the defendant. The user of the street was south of the line of the fence, and no part of the lands upon which the fence was situated, or enclosed by it, had actually been used as a part of the highway. The power conferred upon the trustees is “to survey and determine” the boundaries of the streets as the streets actually exist; to make a map of the streets as they actually find them, either by the record, or as they have become settled and fixed by user in cases where no record exists. The word “determine” as used in the statute is synonymous with “ ascertain.”
By the common law, as well as by statute, roads which have been used for twenty years or more, although not recorded, are to be deemed public highways. It was provided by the Revised Statutes that the commissioners *353 of highways should cause such roads to be “ ascertained, described and entered of record.”
Bronson, J., in The People v. The Judges of Cortland, (24 Wend. 493,) remarked that “if in doing this they have encroached upon lands which do not belong to the highway as it has actually been opened and used, the owner probably has a remedy in some form and he suggests that the act may be void because beyond their jurisdiction. Under similar language it was held in Talmage v. Hunting, (39 Barb. 654,) “that commissioners are not to lay a new road or to enlarge the limits of an old one,” and that “the lands cannot be taken for either purpose without due process of law, and without awarding compensation therefor to the owners.” In that case the commissioners heard testimony and enlarged the limits beyond the actual use thereof, and it was held that their order was void. This case was very fully considered in the Court of Appeals and affirmed. (29 N. Y. 447.)
This power to “survey and determine” is given for the purpose of perpetuating the evidence of the existence of a highway. And it cannot be held to authorize the trustees to take away a citizen’s property; they must leave that untouched; that is protected by the law and constitution, which they cannot subvert. (Howard v. Robbins, (1 Lans. 65.) In this last case it was insisted that the use of the word “determine,” in respect to what was a nuisance, rendered the act of the trustees conclusive evidence of the existence thereof, but the court very properly repudiated that construction.
It follows, therefore, that the same acts of the defendant in removing the fence in question are not justified, and were in violation of the plaintiff’s rights.
The evidence in respect to the extent of damages done is quite conflicting.
The plaintiff is entitled to recover such sum as will, properly expended, restore the premises to their con *354 dition before the interference therewith by the defendant. Considering all the evidence in respect to the damages, the conclusion is reached that §375 will restore the premises ; and judgment for that amount will be ordered for the plaintiff, with costs.
[Onondaga Special Term,
May 20, 1872.
Hardin, Justice. Affirmed at a General Term in the 4th Department, held at Rochester, in April, 1873. Mullin, Talcott and E. D H. Smith, Justices.]
Judgment accordingly.